**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| THOMAS JOHN SPEAR,<br>Plaintiff,<br>v.<br><br>DAVID ANDERSON, in his individual capacity; DAVID ANDERSON, in his official capacity as Chief of Police for the Lisle Police Department; ROBERT B. BERLIN, in his official capacity as State's Attorney of DuPage County; JAMES ECCARDT, in his individual capacity; JAMES ECCARDT, in his official capacity as Detective for the Lisle Police Department; ROBERT GUERRIERI, in his individual capacity; ROBERT GUERRIERI, in his official capacity as Investigator for the DuPage County State's Attorney's Office; CHRISTOPHER LOUDON, in his individual capacity; CHRISTOPHER LOUDON, in his official capacity as Detective for the Lisle Police Department; MARK LUTZ, in his individual capacity; MARK LUTZ, in his official capacity as Detective Sergeant for the Lisle Police Department; CYNDY VELAZQUEZ, in her individual capacity; DUPAGE COUNTY, ILLINOIS; and VILLAGE OF LISLE, DUPAGE COUNTY, STATE OF ILLINOIS,<br><br>Defendants. | Case No. 1:19-cv-06027<br><br>Judge Matthew F. Kennelly<br><br>**JURY DEMANDED** |

## **FIRST AMENDED COMPLAINT**

Plaintiff, THOMAS JOHN SPEAR files this First Amended Complaint, pursuant to the Court's Order (ECF No. 20), against Defendants DAVID ANDERSON, in his individual capacity; DAVID ANDERSON, in his official capacity as Chief of Police for the Lisle Police Department; ROBERT B. BERLIN, in his official capacity as State's Attorney of DuPage

County; JAMES ECCARDT, in his individual capacity; JAMES ECCARDT, in his official capacity as Detective for the Lisle Police Department; ROBERT GUERRIERI, in his individual capacity; ROBERT GUERRIERI, in his official capacity as Investigator for the DuPage County State's Attorney's Office; CHRISTOPHER LOUDON, in his individual capacity; CHRISTOPHER LOUDON, in his official capacity as Detective for the Lisle Police Department; MARK LUTZ, in his individual capacity; MARK LUTZ, in his official capacity as Detective for the Lisle Police Department; CYNDY VELAZQUEZ, in her individual capacity; DUPAGE COUNTY, ILLINOIS; and VILLAGE OF LISLE, DUPAGE COUNTY, STATE OF ILLINOIS (collectively, the "Defendants"), states as follows:

## NATURE OF THE CASE

1. Defendants coerced a murder confession from Plaintiff by continuing to question him without counsel present after Plaintiff had invoked his right to counsel. Although the judge in the criminal case suppressed the confession as a result of Defendants' violation of Plaintiffs' constitutional rights, Plaintiff still suffered years of improper confinement, felt compelled to plead guilty to a manslaughter charge of which he was innocent, and has endured significant reputational damage that has impacted his employment and his personal relationships.

2. Plaintiff brings this First Amended Complaint pursuant to the Fifth and Fourteenth Amendments to the Constitution of the United States and the Civil Rights Act, Title 42, Section 1983 ("Section 1983"). This Section 1983 case concerns the serious harm, pain, and suffering Plaintiff has incurred as a result of Defendants' illegal and unconstitutional interrogation of Plaintiff. Through this action, Plaintiff seeks to redress the wrongs he suffered as a result of the Defendants' deliberate and wrongful acts and/or omissions and seeks compensatory and punitive damages, costs, and reasonable attorney's fees and any other relief that the Court deems just and proper.

## PARTIES

3. Plaintiff is an individual who currently resides at 1512 N. 4th St., Chillicothe, Illinois 61523. At other times relevant to this Complaint, Plaintiff has resided at various locations within the Northern, Central, and Southern Districts of Illinois, including 1216 Melbourne, Peoria, Illinois, DuPage County Jail, 501 North County Farm Road, Wheaton, Illinois 60187, and Robinson Correctional Center, 13423 East 1150th Avenue, Robinson, Illinois 62454.

4. Defendant DAVID ANDERSON is an individual who at the time of the illegally coerced confession was the Chief of Police for the Lisle Police Department. Defendant Anderson was responsible for the operation and administration of the Lisle Police Department. Defendant Anderson was also responsible for implementing, enforcing and supervising the policies, customs, practices, and procedures of the Lisle Police Department, including ensuring that members of the Lisle Police Department employ constitutional and legal interrogation methods of suspects. Defendant Anderson is sued in his individual and official capacity.

5. Defendant ROBERT B. BERLIN is an individual who at the time of the illegally coerced confession was the State's Attorney of DuPage County. Defendant Berlin was responsible for the operation and administration of the DuPage County State's Attorney's Office. Defendant Berlin was also responsible for implementing, enforcing and supervising the policies, customs, practices, and procedures of the DuPage County State's Attorney's Office, including ensuring that members of the DuPage County State's Attorney's Office employ constitutional and legal interrogation methods of suspects. Defendant Berlin is sued in his official capacity as the State's Attorney of DuPage County.

6. Plaintiff believes that he will likely have evidentiary support after a reasonable opportunity for further investigation or discovery to establish that the DuPage County State's Attorney's Office is a local public entity under the laws of the State of Illinois and is funded by

DuPage County (defined below). The State's Attorney of DuPage County is liable to indemnify Defendant Guerrieri pursuant to 745 ILCS 10/9-102 and therefore, Defendant Berlin in his official capacity as State's Attorney of DuPage County is an indispensable party.

7. Defendant ROBERT B. BERLIN, in his official capacity as State's Attorney of DuPage County is also responsible for the execution of unconstitutional governmental policies and/or customs, under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

8. Defendant JAMES ECCARDT, is an individual who at the time of the illegally coerced confession was a detective for the Lisle Police Department. Defendant Eccardt is sued in his individual and official capacity.

9. Defendant ROBERT GUERRIERI is an individual who at the time of the illegally coerced confession was an investigator for the DuPage County State's Attorney's Office. Defendant Guerrieri is sued in his individual and official capacity.

10. Defendant CHRISTOPHER LOUDON, is an individual who at the time of the illegally coerced confession was a detective for the Lisle Police Department. Defendant Loudon is sued in his individual and official capacity.

11. Defendant MARK LUTZ, is an individual who at the time of the illegally coerced confession was a detective sergeant for the Lisle Police Department. Defendant Lutz is sued in his individual and official capacity.

12. Defendant CYNDY VELAZQUEZ, is an individual who at the time of the illegally coerced confession was a lieutenant for the Lombard Police Department. Defendant Velazquez is sued in her individual capacity.

13. Defendant DUPAGE COUNTY, ILLINOIS ("DuPage County") was the employer of Defendant Guerrieri. DuPage County is a local public entity under the laws of the

State of Illinois. DuPage County is liable to indemnify Defendant Guerrieri pursuant to 745 ILCS 10/9-102 and therefore is an indispensable party. *See Askew v. Sheriff of Cook Cty.*, 568 F.3d 632, 636 (7th Cir. 2009).

14. Defendant DUPAGE COUNTY is also responsible for the execution of unconstitutional governmental policies and/or customs, under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

15. Defendant VILLAGE OF LISLE, DUPAGE COUNTY, STATE OF ILLINOIS ("Village of Lisle") was the employer of Defendants Anderson, Eccardt, Loudon, and Lutz, at all times relevant to this Complaint. Village of Lisle is a local public entity under the laws of the State of Illinois. Village of Lisle is liable to indemnify Defendants Anderson, Eccardt, Loudon, and Lutz pursuant to 745 ILCS 10/9-102 and therefore is an indispensable party. *See Blancas v. Village of Rosemont*, No. 07 C 4310, 2008 WL 4682217, at *1-2 (N.D. Ill. May 21, 2008) (citing *Wilson v. City of Chicago*, 120 F.3d 681 (7th Cir. 1997) (affirming denial of motion to dismiss claim against city under 745 ILCS 10/9-102)).

16. Defendant VILLAGE OF LISLE is also responsible for the execution of unconstitutional governmental policies and/or customs, under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over Plaintiff's federal claims, pursuant to 28 U.S.C. §§ 1331, 1367.

18. Venue is proper in this District pursuant to 28 U.S.C. §1391 because at least one of the Defendants resides in this District, all Defendants are residents of the State of Illinois, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

### Underlying Events Leading Up To Plaintiff's Arrest

19. On August 1, 1994, Plaintiff was approached by two individuals he knew—Stacy Dotson and Sean Manley—who gave Plaintiff a stolen checkbook belonging to Illa Venard and asked Plaintiff to assist them in forging checks to obtain cash.

20. Ms. Dotson and Mr. Manley asked Plaintiff to sign checks from Ms. Venard's checkbook made out to "Cash", to cash the checks, and to share the proceeds with Dotson and Manley.

21. Plaintiff agreed, and on August 1, 1994**,** he signed and cashed a total of four checks from Ms. Venard's checkbook for a total of $1,200. Plaintiff gave most of the money to Dotson and Manley.

22. Other than forging and cashing the checks in this way, Plaintiff has never had any other contact or involvement with Ms. Venard. He did not take her checkbook or otherwise have any interactions with her at any time.

23. On August 4, 1994, Ms. Venard was found dead in her residence located at 430 Walnut Creek Lane, Apt. 2201 in Lisle, Illinois. An autopsy was performed, and the cause of death was undetermined.

24. An investigation began into Ms. Venard's death, and police originally considered Ms. Venard's children to be possible suspects, but the investigation ended with no charges being filed.

25. Almost three years later, on August 29, 1997, Stacy Dotson went to the Lisle Police Department and provided information regarding Ms. Venard. Ms. Dotson stated that she resided with her mother in a unit down the hall from Ms. Venard. Ms. Dotson also falsely stated

to police that Plaintiff had approached Ms. Dotson and Mr. Manley with Ms. Venard's checkbook and asked for their assistance in forging and cashing checks.

26. Ms. Dotson's information was false and had things backwards. Ms. Dotson and Mr. Manley brought the checkbook to Plaintiff, not the other way around as Ms. Dotson claimed.

27. Police made no contact with Plaintiff in response to Ms. Dotson's information for nearly twenty years.

28. In or around February 2017, Defendants Lisle Detectives Loudon, Eccardt, and Sargent Lutz met with the DuPage County State's Attorney's Office regarding re-opening the investigation of the death of Ms. Venard. Detectives met and interviewed numerous witnesses from February 2017 through September 2017, all before initiating contact with Plaintiff. During this time, Plaintiff resided and worked in Peoria, Illinois.

**<u>Plaintiff's Interrogation In Peoria</u>**

29. On September 27, 2017, Defendant Detective Eccardt from the Lisle Police Department, with the assistance of Defendant Investigator Guerrieri of the DuPage County State's Attorney's Office and Defendant Lieutenant Cyndy Velazquez of the Lombard Police Department, conducted surveillance at Plaintiff's residence located at 1216 Melbourne, Peoria, Illinois.

30. That evening, after Plaintiff had returned home from work, Defendants Detective Eccardt, Investigator Guerrieri, and Lieutenant Velazquez knocked on Plaintiff's residence door and met with Plaintiff. Defendants asked Plaintiff to go with them to the Peoria Police Department for questioning, but falsely told him the questioning only related to forged checks. Based on Defendants' misrepresentation regarding the purpose of the interview, Plaintiff voluntarily agreed to travel to the Peoria Police Department and answer questions. Plaintiff

would not have agreed to answer questions alone if Defendants had honestly told him that he was a suspect in a murder investigation.

31. Plaintiff and Defendants arrived at the Peoria Police Department at approximately 6:00 PM. Defendant Guerrieri read Plaintiff his *Miranda* rights, and Plaintiff agreed to speak with them. At that time, and based on Defendants' false statements regarding the purpose of the questioning, Plaintiff remained under the mistaken impression that the investigation related solely to four forged checks for $1,200 from over 20 years ago.

32. Plaintiff's subsequent interrogation was recorded.

33. Defendants Guerrieri and Eccardt questioned Plaintiff regarding whether he forged checks that belonged to Ms. Venard. Plaintiff admitted to writing the checks and cashing them.

34. Defendants Guerrieri and Eccardt also began questioning Plaintiff regarding whether he had broken into Ms. Venard's apartment and stolen her checkbook. Initially, Plaintiff falsely acknowledged having done so in an effort to protect Manley and Dotson, whom he considered friends.

35. The circumstances of the interrogation changed when Defendants Guerrieri and Eccardt's questions began suggesting that Plaintiff had killed Ms. Venard as part of obtaining the checkbook. At that point, Plaintiff unambiguously invoked his right to counsel: "Lawyer. I need a lawyer. I didn't hurt anybody. I am sorry. You guys are going-I felt what you are doing, you['re] building-you've been building up, inching me towards you. I told you what I've done."

36. Defendants Guerrieri and Eccardt were obligated to cease interrogating Plaintiff at this point. But Defendants did not cease their questioning and did not arrange for Plaintiff to speak to an attorney. Instead, they continued questioning Plaintiff without providing him the

attorney Plaintiff requested. After several more improper questions by Defendants, Plaintiff agreed to continue talking with the Defendants so long as the questioning was unrelated to any suggestion that Plaintiff harmed Ms. Venard in any way, which Plaintiff adamantly denied doing. But Defendants continued questioning Plaintiff regarding Ms. Venard's death, and Plaintiff ultimately complied and continued to answer Defendants' questions.

37. Defendant Lieutenant Velazquez later joined the interrogation and acknowledged that Plaintiff had already requested counsel. Despite Plaintiff's request for an attorney, and despite Plaintiff never being given an attorney, Defendants Eccardt and Velazquez continued on questioning Plaintiff concerning the death of Ms. Venard.

38. At no point after Plaintiff invoked his right to counsel did Plaintiff reinitiate contact with Defendants or waive his right to counsel. Plaintiff's statements obtained by Defendants Guerrieri, Eccardt, and Velazquez, some of which implicated him in the death of Ms. Venard, were not made voluntarily.

39. Further, Plaintiff repeatedly complained of his physical ailments during the interrogation.

40. Plaintiff was subsequently transported to the Lisle Police Department.

**<u>Plaintiff's Interrogation In Lisle And Criminal Charges</u>**

41. While in custody in the Defendant Lisle Police Department, Plaintiff was once again interrogated on September 28, 2017. Defendant Detective Christopher Loudon and Defendant Detective Sergeant Mark Lutz resumed the interrogation without first honoring Plaintiffs' prior request for an attorney, and Plaintiff continued to comply with the unlawful interrogation. Plaintiff's interrogation was recorded, and during the interrogation, Plaintiff made further statements that implicated him in Ms. Venard's death.

42. All of the statements made by Plaintiff over the two-day interrogation that implicated him in Ms. Venard's death were false. Plaintiff never had contact with Ms. Venard and had nothing to do with her death. Defendants' illegally continued the interrogation after Plaintiff had invoked his right to an attorney, which resulted in Plaintiff implicating himself in her death.

43. As discussed below, the judge presiding over Plaintiff's criminal case agreed that the interrogation was illegal and suppressed the statements. But the illegal interrogation nonetheless substantially damaged Plaintiff as discussed below.

**Criminal Charges Brought Against Plaintiff**

44. On September 29, 2017, Plaintiff was charged with multiple counts of forgery in the Circuit Court of the Eighteenth Judicial Circuit in DuPage County, Illinois styled, *People of the State of Illinois v. Thomas J. Spear*, 2017 CF 2055 ("Forgery Case").

45. On October 23, 2017, as a result of the illegally coerced confession, Plaintiff was charged with First Degree Murder in the Circuit Court of the Eighteenth Judicial Circuit in DuPage County, Illinois styled, *People of the State of Illinois v. Thomas J. Spear*, 2017 CF 2231 ("Murder Case" which, together with Forgery Case, are the "Criminal Cases").

46. News outlets published Plaintiff's photograph and the fact that he had been charged with murder.

47. On October 23, 2017, the DuPage County State's Attorney's Office petitioned the court to deny bail to Plaintiff for the Murder Case, citing the illegally coerced confession as a basis to deny bail. After a bond hearing, Judge George J. Bakalis denied the petition and set bail at $3,000,000, which Plaintiff was not able to pay.

48. On October 31, 2017, during a grand jury proceeding, Defendant Loudon further used Plaintiff's illegally coerced confession to testify that Plaintiff admitted he physically harmed Ms. Venard, causing her death.

49. After being charged in the Murder Case and having his bail set at $3,000,000, Plaintiff remained in custody for almost two years while his case moved slowly through the court system.

**Plaintiff's Motion To Suppress Illegally Coerced Confession**

50. On June 25, 2019, Plaintiff moved to suppress the illegally coerced confession in the Murder Case.

51. On August 22, 2019, Judge Bakalis granted Plaintiff's motion, holding that Defendants Eccardt, Guerrieri, Loudon, Lutz, and Velazquez violated Plaintiff's constitutional rights by continuing to question him after he invoked his right to counsel. Judge Bakalis specifically rejected the State's argument that Plaintiff had reinitiated communication with Defendants after invoking his right to counsel. Judge Bakalis found that although Defendants Loudon and Lutz were not present during Plaintiff's invocation of counsel the day before, such knowledge of the invocation was "imputed to them."

52. Based on his finding that Defendants had violated Plaintiff's constitutional rights, Judge Bakalis suppressed the portion of the September 27, 2017 questioning that occurred after Plaintiff's request for counsel and all of the September 28, 2017 questioning. A copy of the August 22, 2019 Memorandum Opinion is attached as Exhibit 1.

**Conclusion Of The Criminal Cases**

53. After Judge Bakalis' suppression of Plaintiff's illegally coerced confession, the DuPage County State's Attorney's Office offered Plaintiff a plea deal for Plaintiff to plead guilty to one count of involuntary manslaughter and one count of forgery.

54. When it relayed the plea offer, the State's Attorney's Office made clear that if Plaintiff rejected the offer, they would appeal Judge Bakalis' suppression ruling, which would not only further delay the proceedings but subject Plaintiff to the risk of the illegal confession ultimately being used against him.

55. Based on the risks of further delay and legal jeopardy, on September 23, 2019, Plaintiff agreed to the DuPage County State's Attorney's Office's plea deal and pled guilty to one count of involuntary manslaughter and one count of forgery. Plaintiff was then sentenced to five years imprisonment and received credit for two years of time served in custody.

56. Based on the sentencing law in effect in 1994 when the events in question occurred, Plaintiff received "good time" credit that reduced his sentence. On April 23, 2020, Plaintiff was released from the Robinson Correctional Center.

**Defendants' Unconstitutional Policies**

57. The DuPage County State's Attorney's Office is an organizational division of DuPage County.

58. The Lisle Police Department is an organizational division of the Village of Lisle.

59. Plaintiff believes that he will likely have evidentiary support after a reasonable opportunity for further investigation or discovery to establish that the DuPage County State's Attorney's Office had: (1) an official policy adopted and promulgated by its investigators to continue questioning suspects after they invoked their right to counsel; (2) a governmental

practice or custom to continue questioning suspects after they invoked their right to counsel and, although not officially authorized, is widespread and wide settled; and/or (3) Defendant Guerrieri had final policy-making authority to continue questioning Plaintiff after he invoked his right to counsel.

60. Plaintiff believes that he will likely have evidentiary support after a reasonable opportunity for further investigation or discovery to establish that the Lisle Police Department had: (1) an official policy adopted and promulgated by its detectives to continue questioning suspects after they invoked their right to counsel; (2) a governmental practice or custom to continue questioning suspects after they invoked their right to counsel and, although not officially authorized, is widespread and wide settled; (3) Defendant Anderson, with final policy-making authority, caused Lisle Police Department detectives to continue questioning Plaintiff after he invoked his right to counsel; and/or (4) Defendants Eccardt, Loudon, or Lutz had final policy-making authority to continue questioning Plaintiff after he invoked his right to counsel.

61. Evidence supporting Plaintiff's information and belief includes the fact that the illegal practices here were not isolated to a single individual but were committed by four different individuals. Further, the DuPage County State's Attorney's Office defended the illegal coercion of Plaintiff's confession as appropriate conduct from its investigator and from the Lisle Police, suggesting that the conduct—which Judge Bakalis found to be illegal—violated no policies of the DuPage County State's Attorney's Office and/or the Lisle Police Department.

**Plaintiff's Injuries Resulting From The Illegally Coerced Confession**

62. The illegally coerced confession was the critical piece of evidence used against the Plaintiff in the Murder Case. When the confession was suppressed, the State's Attorney's

Office acknowledged the confession was key evidence. Without the illegally coerced confession, the state's attorney would not have been able to secure a murder conviction.

63. As a result of the illegally coerced confession, Plaintiff suffered significant injuries, including but not limited to:

A. Plaintiff lost his employment and income when he was taken into custody;

B. Plaintiff has not been able to procure new employment subsequent to his release, notwithstanding his repeated attempts to seek new employment, given the substantial stain on his reputation at being charged with First-Degree Murder and ultimately convicted of involuntary manslaughter;

C. Plaintiff lost his home and personal property when he was taken into custody;

D. Plaintiff's physical and psychological health greatly deteriorated during his incarceration due to inadequate diet and exercise facilities and has been subsequently diagnosed with depression and post-traumatic stress disorder;

E. Plaintiff has lost significant personal relationships, including the affection of his former fiancée;

F. Plaintiff has had difficulty developing new personal relationships since his release given the substantial stain on his reputation at being charged with First-Degree Murder and ultimately convicted of involuntary manslaughter; and

G. Plaintiff's reputation has otherwise been destroyed.

**COUNT I**
**FIFTH AMENDMENT CLAIM IN VIOLATION OF 42 U.S.C. § 1983**
**(Against Defendants Anderson, Eccardt, Guerrieri, Loudon, Lutz, Velazquez – In Their Individual Capacities)**

64. Plaintiff restates and re-alleges the allegations set forth in paragraphs 1 through 63 of this First Amended Complaint.

65. Plaintiff has a federally protected right to not be interrogated once he has invoked his right to counsel under the Fifth Amendment of the Constitution, as made applicable to the states through the Fourteenth Amendment.

66. Defendants Eccardt, Guerrieri, Loudon, Lutz, and Velazquez continued to interrogate Plaintiff after he invoked his right to counsel, in violation of his Fifth Amendment rights.

67. Plaintiff believes that he will likely have evidentiary support after a reasonable opportunity for further investigation or discovery to establish that the Lisle Police Department has a policy whereby Defendant Anderson as Chief of Police bears responsibility for the management and day-to-day operations at the Lisle Police Department, including ensuring that detectives employ legal interrogation tactics during questioning.

68. Plaintiff believes that he will likely have evidentiary support after a reasonable opportunity for further investigation or discovery to establish that Defendant Anderson was aware of Defendants' Eccardt, Guerrieri, Loudon, and Lutz's continuing interrogation of Plaintiff in violation of his Fifth Amendment rights and that Defendant Anderson facilitated, approved, condoned, or turned a blind eye to the continued interrogation of Plaintiff.

69. Defendants Anderson, Eccardt, Guerrieri, Loudon, Lutz, and Velazquez acted under the color of state law.

70. Plaintiff's illegally coerced confession was introduced as evidence against him in the Criminal Cases, including but not limited to, during grand jury proceedings, the State's petition to deny bail, and the State's response to Plaintiff's motion to suppress.

71. Defendants Anderson, Eccardt, Guerrieri, Loudon, Lutz, and Velazquez's actions described in this Count were objectively unreasonable and were undertaken intentionally with willful indifference to the Plaintiff's constitutional rights.

72. Defendants Anderson, Eccardt, Guerrieri, Loudon, Lutz, and Velazquez's actions described in this Count were undertaken with malice, willfulness, and reckless indifference to the Plaintiff's constitutional rights.

73. As a result of Defendants' Anderson, Eccardt, Guerrieri, Loudon, Lutz, and Velazquez's actions and/or inactions, Plaintiff suffered significant damages, as described above.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants ANDERSON, ECCARDT, GUERRIERI, LOUDON, LUTZ, and VELAZQUEZ as follows:

1. Granting Plaintiff compensatory damages in an amount not yet known and to be determined at trial;
2. Granting Plaintiff an award of costs, pursuant to 28 U.S.C. § 1920;
3. Granting Plaintiff punitive damages in an amount to be determined;
4. Granting Plaintiff an award of reasonable attorney's fees, pursuant to 42 U.S.C. § 1988; and
5. Granting any such other relief as this Honorable Court deems just and proper.

## COUNT II
## FIFTH AMENDMENT CLAIM IN VIOLATION OF 42 U.S.C. § 1983
**(Against Defendants Anderson, Eccardt, Guerrieri, Loudon, and Lutz – In Their Official Capacities)**

74. Plaintiff restates and re-alleges the allegations set forth in paragraphs 1 through 63 of this First Amended Complaint.

75. Plaintiff has a federally protected right to not be interrogated once he has invoked his right to counsel under the Fifth Amendment of the Constitution, as made applicable to the states through the Fourteenth Amendment.

76. Plaintiff believes that he will likely have evidentiary support after a reasonable opportunity for further investigation or discovery to establish that Defendant Guerrieri: (1) employed an official policy adopted and promulgated by the DuPage County State's Attorney's Office to continue questioning Plaintiff after he invoked his right to counsel; (2) employed a governmental practice or custom to continue questioning Plaintiff after he invoked his right to counsel, which, although not officially authorized, is widespread and wide settled; and/or (3) Defendant Guerrieri had final policy-making authority to continue questioning Plaintiff after he invoked his right to counsel.

77. Plaintiff believes that he will likely have evidentiary support after a reasonable opportunity for further investigation or discovery to establish that Defendants Anderson, Eccardt, Loudon, and Lutz: (1) employed or caused to employ an official policy adopted and promulgated by the Lisle Police Department to continue questioning Plaintiff after he invoked his right to counsel; (2) employed or caused to employ a governmental practice or custom to continue questioning Plaintiff after he invoked his right to counsel, which, although not officially authorized, is widespread and wide settled; and/or (3) Defendants Anderson, Eccardt, Loudon, or Lutz had final policy-making authority to cause continued questioning of Plaintiff after he invoked his right to counsel.

78. Plaintiff believes that he will likely have evidentiary support after a reasonable opportunity for further investigation or discovery to establish that Defendant Anderson as Chief of Police bears responsibility for the management and day-to-day operations at the Lisle Police Department, including ensuring that detectives employ legal interrogation tactics during questioning.

79. Plaintiff believes that he will likely have evidentiary support after a reasonable opportunity for further investigation or discovery to establish that Defendant Anderson was aware of Defendants' continuing interrogation of Plaintiff in violation of his Fifth Amendment rights, and Defendant Anderson facilitated, approved, condoned, or turned a blind eye to Defendants' continued interrogation of Plaintiff.

80. Defendants Anderson, Eccardt, Guerrieri, Loudon, and Lutz acted under the color of state law.

81. Plaintiff's illegally coerced confession was introduced as evidence against him in the Criminal Cases, including but not limited to, during grand jury proceedings, the State's petition to deny bail, and the State's response to Plaintiff's motion to suppress.

82. Defendants Anderson, Eccardt, Guerrieri, Loudon, and Lutz's actions described in this Count were objectively unreasonable and were undertaken intentionally with willful indifference to the Plaintiff's constitutional rights.

83. Defendants Anderson, Eccardt, Guerrieri, Loudon, and Lutz's actions described in this Count were undertaken with malice, willfulness, and reckless indifference to the Plaintiff's constitutional rights.

84. As a result of Defendants' Anderson, Eccardt, Guerrieri, Loudon, and Lutz's actions and/or inactions, Plaintiff suffered significant damages as described above.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants ANDERSON, ECCARDT, GUERRIERI, LOUDON, and LUTZ as follows:

1. Granting Plaintiff compensatory damages in an amount not yet known and to be determined at trial;
2. Granting Plaintiff an award of costs, pursuant to 28 U.S.C. § 1920;
3. Granting Plaintiff an award of reasonable attorney's fees, pursuant to 42 U.S.C. § 1988; and

4. Granting any such other relief as this Honorable Court deems just and proper.

**COUNT III**
**FOURTEENTH AMENDMENT CLAIM IN VIOLATION OF 42 U.S.C. § 1983**
**(Against Defendants Anderson, Eccardt, Guerrieri, Loudon, Lutz, Velazquez – In Their Individual Capacities)**

85. Plaintiff restates and re-alleges the allegations set forth in paragraphs 1 through 63 of this First Amended Complaint.

86. Plaintiff has a federally protected right to not be deprived of life, liberty, or property, without due process of law under the Fourteenth Amendment of the Constitution.

87. Defendants Eccardt, Guerrieri, Loudon, Lutz, and Velazquez continued to interrogate Plaintiff after he invoked his right to counsel, in violation of his Fourteenth Amendment due process rights.

88. Plaintiff believes that he will likely have evidentiary support after a reasonable opportunity for further investigation or discovery to establish that Defendant Anderson as Chief of Police bears responsibility for the management and day-to-day operations at the Lisle Police Department, including ensuring that detectives employ interrogation tactics that comport with due process under the Fourteenth Amendment.

89. Plaintiff believes that he will likely have evidentiary support after a reasonable opportunity for further investigation or discovery to establish that Defendant Anderson was aware of Defendants' continuing interrogation of Plaintiff in violation of his Fourteenth Amendment rights, and Defendant Anderson facilitated, approved, condoned, or turned a blind eye to Defendants' continued interrogation of Plaintiff.

90. Defendants' violations of Plaintiff's Fourteenth Amendment rights are offensive to human dignity and shock the conscience, as Defendants continued to interrogate Plaintiff for

more than a day after Plaintiff requested counsel, and Defendants ignored Plaintiff's articulated health concerns.

91. Defendants Anderson, Eccardt, Guerrieri, Loudon, Lutz, and Velazquez acted under the color of state law.

92. Plaintiff's illegally coerced confession was introduced as evidence against him in the Criminal Cases, including but not limited to, during grand jury proceedings, the State's petition to deny bail, and the State's response to Plaintiff's motion to suppress.

93. Defendants Anderson, Eccardt, Guerrieri, Loudon, Lutz, and Velazquez's actions described in this Count were objectively unreasonable and were undertaken intentionally with willful indifference to the Plaintiff's constitutional rights.

94. Defendants Anderson, Eccardt, Guerrieri, Loudon, Lutz, and Velazquez's actions described in this Count were undertaken with malice, willfulness, and reckless indifference to the Plaintiff's constitutional rights.

95. As a result of Defendants' Anderson, Eccardt, Guerrieri, Loudon, Lutz, and Velazquez's actions and/or inactions, Plaintiff suffered significant damages as described above.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants ANDERSON, ECCARDT, GUERRIERI, LOUDON, LUTZ, and VELAZQUEZ as follows:

1. Granting Plaintiff compensatory damages in an amount not yet known and to be determined at trial;

2. Granting Plaintiff an award of costs, pursuant to 28 U.S.C. § 1920;

3. Granting Plaintiff punitive damages in an amount to be determined;

4. Granting Plaintiff an award of reasonable attorney's fees, pursuant to 42 U.S.C. § 1988; and

5. Granting any such other relief as this Honorable Court deems just and proper.

**COUNT IV**
**FOURTEENTH AMENDMENT CLAIM IN VIOLATION OF 42 U.S.C. § 1983**
**(Against Defendants Anderson, Eccardt, Guerrieri, Loudon, and Lutz – In Their Official Capacities)**

96. Plaintiff restates and re-alleges the allegations set forth in paragraphs 1 through 63 of this First Amended Complaint.

97. Plaintiff has a federally protected right to not be deprived of life, liberty, or property, without due process of law under the Fourteenth Amendment of the Constitution.

98. Defendants Eccardt, Guerrieri, Loudon, and Lutz, continued to interrogate Plaintiff after he invoked his right to counsel, in violation of his Fourteenth Amendment due process rights.

99. Plaintiff believes that he will likely have evidentiary support after a reasonable opportunity for further investigation or discovery to establish that the Lisle Police Department has a policy whereby Defendant Anderson as Chief of Police bears responsibility for the management and day-to-day operations at the Lisle Police Department, including ensuring that detectives employ interrogation tactics that comport with the Fourteenth Amendment's due process.

100. Plaintiff believes that he will likely have evidentiary support after a reasonable opportunity for further investigation or discovery to establish that Defendant Anderson was aware of Defendants' continuing interrogation of Plaintiff in violation of his Fourteenth Amendment rights, and Defendant Anderson facilitated, approved, condoned, or turned a blind eye to Defendants' continued interrogation of Plaintiff.

101. Plaintiff believes that he will likely have evidentiary support after a reasonable opportunity for further investigation or discovery to establish that Defendant Guerrieri: (1) employed an official policy adopted and promulgated by the DuPage County State's Attorney's Office to continue questioning Plaintiff after he invoked his right to counsel; (2) employed a governmental practice or custom to continue questioning Plaintiff after he invoked his right to counsel, which, although not officially authorized, is widespread and wide settled; and/or (3) Defendant Guerrieri had final policy-making authority to continue questioning Plaintiff after he invoked his right to counsel.

102. Plaintiff believes that he will likely have evidentiary support after a reasonable opportunity for further investigation or discovery to establish that Defendants Anderson, Eccardt, Loudon, and Lutz: (1) employed or caused to employ an official policy adopted and promulgated by the Lisle Police Department to continue questioning Plaintiff after he invoked his right to counsel; (2) employed or caused to employ a governmental practice or custom to continue questioning Plaintiff after he invoked his right to counsel, which, although not officially authorized, is widespread and wide settled; and/or (3) Defendants Anderson, Eccardt, Loudon, or Lutz had final policy-making authority to cause continued questioning of Plaintiff after he invoked his right to counsel.

103. Defendants Anderson, Eccardt, Guerrieri, Loudon, and Lutz acted under the color of state law.

104. Plaintiff's illegally coerced confession was introduced as evidence against him in the Criminal Cases, including but not limited to, during grand jury proceedings, the State's petition to deny bail, and the State's response to Plaintiff's motion to suppress.

105. Defendants Anderson, Eccardt, Guerrieri, Loudon, and Lutz's actions described in this Count were objectively unreasonable and were undertaken intentionally with willful indifference to the Plaintiff's constitutional rights.

106. Defendants Anderson, Eccardt, Guerrieri, Loudon, and Lutz's actions described in this Count were undertaken with malice, willfulness, and reckless indifference to the Plaintiff's constitutional rights.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants ANDERSON, ECCARDT, GUERRIERI, LOUDON, and LUTZ as follows:

1. Granting Plaintiff compensatory damages in an amount not yet known and to be determined at trial;
2. Granting Plaintiff an award of costs, pursuant to 28 U.S.C. § 1920;
3. Granting Plaintiff an award of reasonable attorney's fees, pursuant to 42 U.S.C. § 1988; and
4. Granting any such other relief as this Honorable Court deems just and proper.

**COUNT V**
**FAILURE TO INTERVENE TO PREVENT FIFTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL VIOLATIONS**
**(Against Defendants Anderson, Eccardt, Guerrieri, Loudon, Lutz, and Velazquez – In Their Individual Capacities)**

107. Plaintiff restates and re-alleges the allegations set forth in paragraphs 1 through 63 of this First Amended Complaint.

108. Plaintiff has a federally protected right to not be interrogated once he has invoked his right to counsel under the Fifth Amendment of the Constitution, as made applicable to the states through the Fourteenth Amendment.

109. Plaintiff has a federally protected right to not be deprived of life, liberty, or property, without due process of law under the Fourteenth Amendment of the Constitution.

110. Defendants Eccardt, Guerrieri, Loudon, Lutz, and Velazquez continued to interrogate Plaintiff after he invoked his right to counsel, in violation of his Fifth and Fourteenth Amendment rights.

111. Plaintiff believes that he will likely have evidentiary support after a reasonable opportunity for further investigation or discovery to establish that Defendant Anderson as Chief of Police bears responsibility for the management and day-to-day operations at the Lisle Police Department, including ensuring that detectives employ legal interrogation tactics during questioning.

112. Plaintiff believes that he will likely have evidentiary support after a reasonable opportunity for further investigation or discovery to establish that Defendant Anderson was aware of Plaintiff's request for counsel and Defendants' continuing interrogation of Plaintiff in violation of his Fifth Amendment rights, and Defendant Anderson facilitated, approved, condoned, or turned a blind eye to Defendants' continued interrogation of Plaintiff.

113. Plaintiff believes that he will likely have evidentiary support after a reasonable opportunity for further investigation or discovery to establish that Defendants Loudon and Lutz had knowledge of Plaintiff's September 27, 2017 request for counsel when Defendants Loudon and Lutz interrogated Plaintiff on September 28, 2017.

114. Defendants Anderson, Eccardt, Guerrieri, Loudon, Lutz, and Velazquez had a duty to intervene to prevent the other Defendants from violating Plaintiff's Fifth and Fourteenth Amendment rights by continuing to interrogate after Plaintiff invoked the right to counsel.

115. Defendants Eccardt, Guerrieri, Loudon, Lutz, and Velazquez had a realistic opportunity to prevent the violation of Plaintiff's Fifth and Fourteenth Amendment rights as all five Defendants were present during one of the interrogations.

116. Plaintiff believes that he will likely have evidentiary support after a reasonable opportunity for further investigation or discovery to establish that Defendant Anderson was present during at least one of the interrogations and had a realistic opportunity to prevent the violation of Plaintiff's Fifth and Fourteenth Amendment rights.

117. Defendants Anderson, Eccardt, Guerrieri, Loudon, Lutz, and Velazquez acted under the color of state law.

118. Plaintiff's illegally coerced confession was introduced as evidence against him in the Criminal Cases, including but not limited to, during grand jury proceedings, the State's petition to deny bail, and the State's response to Plaintiff's motion to suppress.

119. Defendants Anderson, Eccardt, Guerrieri, Loudon, Lutz, and Velazquez's actions described in this Count were objectively unreasonable and were undertaken intentionally with willful indifference to the Plaintiff's constitutional rights.

120. Defendants Anderson, Eccardt, Guerrieri, Loudon, Lutz, and Velazquez's actions described in this Count were undertaken with malice, willfulness, and reckless indifference to the Plaintiff's constitutional rights.

121. As a result of Defendants' Anderson, Eccardt, Guerrieri, Loudon, Lutz, and Velazquez's actions and/or inactions, Plaintiff suffered significant damages as described above.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants ANDERSON, ECCARDT, GUERRIERI, LOUDON, LUTZ, and VELAZQUEZ as follows:

1. Granting Plaintiff compensatory damages in an amount not yet known and to be determined at trial;

2. Granting Plaintiff an award of costs, pursuant to 28 U.S.C. § 1920;

3. Granting Plaintiff punitive damages in an amount to be determined;

4. Granting Plaintiff an award of reasonable attorney's fees, pursuant to 42 U.S.C. § 1988; and

5. Granting any such other relief as this Honorable Court deems just and proper.

**COUNT VI**
***MONELL* CLAIM FOR VIOLATION OF 42 U.S.C. § 1983**
**(Against Robert B. Berlin, in his official capacity as State's Attorney of DuPage County, DuPage County, and Village of Lisle)**

122. Plaintiff restates and re-alleges the allegations set forth in paragraphs 1 through 63 of this First Amended Complaint.

123. A local governing body is liable for monetary damages under Section 1983, where the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and wide settled; or (3) an official with final policy-making authority. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 674 (7th Cir. 2009).

124. Plaintiff believes that he will likely have evidentiary support after a reasonable opportunity for further investigation or discovery to establish that DuPage County State's Attorney's Office's deficient policies, customs, practices and procedures were the cause of Plaintiff's illegally coerced confession in violation of his Fifth Amendment rights and Defendants' violations of Plaintiff's Fourteenth Amendment rights.

125. Plaintiff believes that he will likely have evidentiary support after a reasonable opportunity for further investigation or discovery to establish that Lisle Police Department's deficient policies, customs, practices and procedures were the cause of Plaintiff's illegally coerced confession in violation of his Fifth Amendment rights and Defendants' violations of Plaintiff's Fourteenth Amendment rights.

126. At all times relevant hereto, the Defendants were acting under color of state law.

127. As a direct and proximate result of the Defendants' deficient policies, customs, practices, and procedures, Plaintiff suffered significant damages as described above.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants ROBERT B. BERLIN, DUPAGE COUNTY, and VILLAGE OF LISLE as follows:

1. Granting Plaintiff compensatory damages in an amount not yet known and to be determined at trial;

2. Granting Plaintiff an award of costs, pursuant to 28 U.S.C. § 1920;

3. Granting Plaintiff an award of reasonable attorney's fees, pursuant to 42 U.S.C. § 1988; and

4. Granting any such other relief as this Honorable Court deems just and proper.

**COUNT VII**
**745 ILCS 10/9-102 CLAIM FOR INDEMNIFICATION OF ROBERT B. BERLIN, DUPAGE COUNTY, AND VILLAGE OF LISLE**

128. Plaintiff restates and re-alleges the allegations set forth in paragraph 1 through 63 of this First Amended Complaint.

129. Defendants Berlin, in his official capacity as State's Attorney of DuPage County, DuPage County, and Village of Lisle are local public entities as defined in 745 ILCS 10/1-206.

130. Defendant Guerrieri was and/or is, at all relevant times, an "employee" of Defendant DuPage County, as defined by 745 ILCS 10/1-202, and the misconduct described above was taken by Defendant Guerrieri while in the course and scope of his employment with Defendant DuPage County.

131. Defendants Anderson, Eccardt, Lutz, and Loudon were and/or are, at all relevant times, "employees" of Defendant Village of Lisle, as defined by 745 ILCS 10/1-202, and the

misconduct described above was taken by Defendants Anderson, Eccardt, Lutz, and Loudon while in the course and scope of their employment with Defendant Village of Lisle.

132. Defendants Berlin, in his official capacity as State's Attorney of DuPage County, DuPage County, and Village of Lisle are liable and responsible for payment of any judgments against or settlements entered into by their respective "employees," pursuant to 745 ILCS 10/9-102.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants Berlin, DuPage County, and Village of Lisle in the amounts awarded to Plaintiff against their respective "employees," pursuant to 745 ILCS 10/9-102.

## **CONCLUSION**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find that the acts and omissions described herein violated Plaintiff's rights under the Constitution of the United States, 42 U.S.C. § 1983, and enter judgment against the Defendants as follows:

A. Granting Plaintiff compensatory damages in an amount to be determined;

B. Granting Plaintiff punitive damages in an amount to be determined;

C. Granting Plaintiff an award of costs and expenses, pursuant to 28 U.S.C. § 1920;

D. Granting Plaintiff an award of reasonable attorney's fees, pursuant to 42 U.S.C. §§ 1983 & 1988 and the laws of the United States; and

E. Granting any such other relief as this Honorable Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury for all aspects of this action for which a trial by jury is available.

DATED: June 15, 2020

THOMAS JOHN SPEAR

By: /s/ P. Russell Perdew
One of His Attorneys

P. Russell Perdew (# 06244114)
Alyssa M. Gregory (# 06320588)
LOCKE LORD LLP
111 S. Wacker Drive
Chicago, IL 60606
Direct: (312) 443-1712 (P. Perdew)
Fax: (312) 896-6712 (P. Perdew)
rperdew@lockelord.com
alyssa.gregory@lockelord.com

*Attorneys for Plaintiff Thomas John Spear*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2020, I electronically filed the above document, First Amended Complaint, with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

/s/ P. Russell Perdew

P. Russell Perdew (# 06244114)
Alyssa M. Gregory (# 06320588)
LOCKE LORD LLP
111 S. Wacker Drive
Chicago, IL 60606
Direct: (312) 443-1712 (P. Perdew)
Fax: (312) 896-6712 (P. Perdew)
rperdew@lockelord.com
alyssa.gregory@lockelord.com

*Attorneys for Plaintiff Thomas John Spear*